UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

LADONNA CINGILLI, on behalf of )
herself and the Estate of Brenda Drone; )
JUSTIN DRONE; and JAMES GOEBEL, )
)
    *Plaintiffs*, )
) NO. 1:16-CV-306
v. ) REEVES/LEE
)
L2 BOARDS, LCC; MARK BALDWIN; )
and JOHN DOE 1, )
)
    *Defendants*. )

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion [D. 30] to certify the Court's July 18, 2017 Order for immediate interlocutory appeal under 28 U.S.C. § 1292(b). Specifically, Defendants request that the Court certify for appeal the question of whether the Court has subject matter jurisdiction under admiralty law over Plaintiffs' claims.[1] Plaintiffs oppose Defendants' motion and assert that interlocutory appeal is not appropriate in this case [D. 33]. For the following reasons, Defendants' motion [D. 30] is denied.

## I.     PROCEDURAL BACKGROUND

Plaintiffs filed this tort action on July 19, 2016, under the Constitution's Admiralty Clause, the federal admiralty-jurisdiction statute, and general maritime law. On October 12, 2016, Defendants moved to dismiss for lack of subject matter jurisdiction. The Court denied Defendants' motion

---

[1] The Court notes, however, that Section 1292(b) "authorizes certification of *orders* for interlocutory appeal, not certification of *questions*." *In re Trump*, 2017 WL 4931963, at *1 n. 3 (6th Cir. Nov. 1, 2017). Accordingly, if an appeal is certified, the appellate court retains full discretion to review the entirety of the district court's order. *Id.*

1

on July 18, 2017, and Defendants' motion to certify the order for interlocutory appeal followed on August 8, 2017.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1292(b), district courts have discretion to allow an interlocutory appeal to be taken from an order that is otherwise not appealable if: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion regarding that question; and (3) immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Review under § 1292(b) is to be "granted sparingly and only in exceptional cases." *In re City of Memphis*, 292 F.3d 345, 350 (6th Cir. 2002). *See also Kraus v. Bd. of Cnty. Road Comm'r*, 364 F.2d 919, 922 (6th Cir. 1966).

## III. ANALYSIS

The parties agree that whether admiralty jurisdiction exists presents a controlling question of law in this case. But the parties disagree as to whether there is substantial ground for difference of opinion on that question, and whether an interlocutory appeal would materially advance the termination of litigation. The Court will address each of the disputed factors in turn.

### a. Substantial Ground for Difference of Opinion

Courts in the Sixth Circuit have found that a "substantial ground for difference of opinion" exists when:

> (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split … on a question that the Sixth Circuit has not answered.

*In re Buccina*, 657 F. App'x 350, 351-352 (6th Cir. 2016) (quoting *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013)). Defendants argue that, in light of Supreme Court and Sixth Circuit precedent, as well as other cases from this district, there is a substantial ground for difference of opinion as to whether Plaintiffs have satisfied the test for admiralty jurisdiction. In order for a court to exercise admiralty jurisdiction under 28 U.S.C. § 1331, the plaintiff's claims must "satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

1. *Location Test*

Under the location test, a court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* In denying Defendants' motion to dismiss, the Court noted that for purposes of the locality test, "the tort 'occurs' where the alleged negligence took effect…." *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 266 (1972). And in the Sixth Circuit, "a tort is deemed to occur at the place where injury is sustained, regardless of the place of origin of the negligent act." *Chapman v. City of Grosse Pointe Farms*, 385 F.2d 962, 965 (6th Cir. 1967). Accordingly, the Court held that the alleged tort in the instance case occurred on a navigable waterway [D. 28, at 2].

Defendants dispute the Court's reading of the precedent, and aver that, for the location test, "the issue is where the alleged breach of duty occurred and not where the plaintiff's injury first commenced and/or finally occurred." [D. 32, at 10]. They have argued, twice now, that *Chapman* was abrogated by the Sixth Circuit's decision in *Executive Jet Aviation, Inc. v. City of City of Cleveland*, 48 F.2d 151 (6th Cir. 1971). The Court disagrees with Defendants' assessment. *Executive Jet* was affirmed by the Supreme Court, but not for its views on the location of a tort. The

Supreme Court "refused to enter into a debate over whether the tort occurred [on land or on water]," and affirmed on other grounds. *Sisson v. Ruby*, 497 U.S. 358, 361 (1990) (discussing the Supreme Court's *Executive Jet* ruling). Thirty years later, the Sixth Circuit cited this refusal with approval, and concluded that applying "too mechanical an application of the locality test is neither sensible nor consonant with the purposes of maritime law." *Ayers v. United States*, 227 F.3d 821 (6th Cir. 2002) (cleaned up). This Court agrees.

The Court's conclusion that the tort in this case occurred on the waterway is guided by existing Sixth Circuit precedent that has not been overruled. "Because there is governing precedent in this circuit that settles the issue at hand, Defendants cannot show the extraordinary circumstances such that an interlocutory appeal should be granted." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013). But in even if *Chapman was* abrogated by *Executive Jet*, the Court has already determined that Plaintiffs' claims would still satisfy the location test [*See* D. 28, at 2-3]. Accordingly, the Court finds that there is not a substantial difference of opinion as to the application of the location test such that certification would be warranted.

### 2. *Connection Test*

Under the connection test, a court must first "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (cleaned up).

The first part of this test "turns on a description of the incident at an intermediate level of possible generality." *Id.* at 538. In the July 18, 2017 Order, the Court characterized the incident in this case as "a drowning that happened when someone fell of a paddle-board into navigable waters

4

without a life vest." [D. 28, at 4]. Consequently, additional vessels may be required to undertake a search and rescue, and other paddleboarders would be forced back to shore, either of which the Court determined would present a risk of a "not-insignificant interruption of commercial activity" on the waterway [*Id.*]. The Court's conclusion was guided in part by *Ayers v. United States*, in which the Sixth Circuit found that the first prong of the connection test was satisfied in a case where "a drowning … occurred a short distance downstream from a lock on navigable waters." 277 F.3d 821, 827 (6th Cir. 2002).

In their motion for certification, Defendants argue that "the facts alleged in the case at a bar" do not involve a search and rescue [D. 32, at 10-11]. But the "potential impact of a given type of incident … does not turn on the *actual* effects on maritime commerce … nor does it turn on the particular facts of the incident in this case." *Sisson v. Ruby*, 497 U.S. 358, 363 (1990). Instead, a court is to focus on the "general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Id.* The Court has done so here. And in light of *Ayers*—which is still good law—there does not seem to be a substantial difference of opinion in this Circuit as to the first prong of the connection test.

The second prong of the connection test focuses on the tortfeasor's conduct, which must have a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 539. "The substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." *Id.* at 541. This test may be satisfied even when the alleged tortfeasor is land-based. *Id.* at 545. In this case—as the Court has previously found—"Defendants are in the business of renting vessels for use on navigable waters." [D. 28, at 4]. This activity (the rental of the paddleboards on land) is substantially related to the vessel's operation and use on a

navigable waterway (the Tennessee River), and is claimed by Plaintiffs to be a proximate cause of Ms. Drone's death.

Defendants contend that this case cannot be brought under admiralty jurisdiction because it "does not involve anything related to maritime shipping." [D. 32, at 13]. They cite to cases that have narrowly interpreted "maritime activity," including one from this district, which held that "a significant relationship to traditional maritime commerce is met only when the persons or events involved have some connection to the shipping industry," *Robert v. Grammer*, 432 F. Supp. 16, 18 (E.D. Tenn. 1977), and a Ninth Circuit case that defined commerce as the purpose of admiralty jurisdiction as "activities related to the business of shipping." *Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir. 1975).

Neither case is binding on this Court. Moreover, both *Robert* and *Adams* were decided in the 1970s, and the Supreme Court has since rejected such a narrow interpretation of the connection test. As the Supreme Court has noted, "[t]he federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674-75 (1982). Accordingly, the maritime activity in question need *not* be related to the shipping business, so long as it has the potential to impact maritime commerce. *Id.* 674-76. *See also Finneseth v. Carter*, 712 F.2d 1041, 1046 (6th Cir. 1983) ("The *Adams* court confused … the two requirements of *Executive Jet*, merged them together and found that the operation of pleasure craft does not affect commercial maritime activity—a position which was squarely rejected by the Supreme Court in the recent case of *Foremost Insurance*.").

This is not to say that any tort case involving a recreational vessel on navigable waters will fall within a federal court's admiralty jurisdiction. But Supreme Court opinions over the past few decades have certainly been trending in that direction. *Compare Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 255-56 & n.5 (1972) (citing to a case brought by an injured water skier against the tow boat operator as lacking "any connection between the wrong and traditional forms of maritime commerce and navigation"), *with Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199, 206 (1996) (noting that admiralty jurisdiction exists in a case against a jet-ski manufacturer following a fatal jet skit accident, simply because it "involves a watercraft collision on navigable waters"). And in the Sixth Circuit, at least, a tort involving a vessel on navigable waters will "ordinarily" fall within the scope of admiralty jurisdiction. *Grubart*, 513 U.S. at 543.

In light of the foregoing, the Court finds that the difference of opinion as to the Court's resolution of the connection test in this case is not so substantial that certification is warranted. While this conclusion is not necessarily the most obvious one, the Court is mindful of the Sixth Circuit's instruction that "[d]oubts regarding appealability should be resolved in favor of finding that the interlocutory order is not appealable." *United States v. Stone*, 53 F.3d 141, 143-44 (6th Cir. 1995) (cleaned up). Even if Defendants were able to establish his element, however, they are unable to meet their burden as to the remaining element set forth under § 1292(b).

### b. Materially Advance the Termination of the Litigation

The party seeking certification of an order must also show that an interlocutory appeal would materially advance the termination of the litigation. In order to satisfy this element, the petitioner "must establish that reversal of the underlying court decision would 'substantially alter the course of the district court proceedings or relieve the parties of significant burdens.'" *United States ex rel. Martin v. Life Care Centers of Am., Inc.*, 2014 WL 12638480, at *4 (E.D. Tenn. Nov.

24, 2014) (quoting *W. Tenn. Chapter of Associated Builders & Contractors, Inc.*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000)).

Defendants have failed to make the requisite showing. In the absence of admiralty jurisdiction, the Court would still have subject matter jurisdiction to hear this case under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000 [*See* D. 1].[2] Defendants admit as much, but they contend that the issue of whether admiralty law or Tennessee substantive law applies is "extremely important" because the governing laws are "vastly different" [D. 32, at 5, 6, 13]. Specifically, Tennessee has adopted a modified comparative fault system, while admiralty law uses pure comparative fault. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992); *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 832 (1996). Further, Tennessee places caps on damages that may not apply under admiralty law. *See* Tenn. Code Ann. § 29-39-102.

In *Foster v. Maldonado*, a district court in the Third Circuit certified for interlocutory appeal an order dealing with choice of law on damages in a wrongful death action. 315 F. Supp. 1179, 1184 (D.N.J. 1970). The Third Circuit denied the petition for leave to appeal, and offered a simpler solution:

> It would seem more appropriate for the District Court to submit the damage claim to the jury with a special interrogatory asking for a separate determination [on the legal elements that differ]. If this procedure is followed, any ultimate appeal may be in a posture for complete and final disposition in [the appellate] Court, whatever choice of law is approved.

433 F.2d 348, 348-49 (3d Cir. 1970). A similar procedure would work well in this case.

---

[2] Defendants repeatedly cite to *SHR Ltd. Partnership v. Braun* for the proposition that interlocutory appeals are proper for reviewing a district court's denial of a motion to dismiss for lack of subject matter jurisdiction. 888 F.2d 455, 456 (6th Cir. 1989). But in that case, no other basis for federal jurisdiction was possible, and neither the Supreme Court nor the Sixth Circuit had decided the issue (and the circuits that had decided it were split). *Id.*

Regardless of which law governs the calculation of damages, the central issues, witnesses, and evidence presented at trial will be largely the same. As the Sixth Circuit has stated, "when litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d at 351 (quoting *White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994)) (cleaned up). In fact, rather than advance the termination of litigation, an immediate appeal of this order would unnecessarily prolong litigation for months. Defendants have not shown that an interlocutory appeal would materially advance the termination of the litigation in this case.

IV.     CONCLUSION

Based on the foregoing, the Court finds that Defendants have not met their burden for demonstrating that an interlocutory appeal is warranted in this case. Accordingly, the Court finds that the July 18, 2017 Order is not immediately appealable, and Defendants' motion for certification [D. 30] is **DENIED.**

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**